164     APPELLATE COURTS OF ILLINOIS.

Stullken v. Donk Bros. Coal & Coke Co., 169 Ill. App. 164.

# George C. Stullken, Adm'r etc., Appellee, v. Donk Bros. Coal & Coke Company, Appellant.

VERDICTS—*when set aside as against the evidence.* A verdict clearly and manifestly against the weight of the evidence will be set aside on review.

Action in case for death caused by alleged wrongful act. Appeal from the Circuit Court of Madison county; the HON. J. M. BANDY, Judge, presiding. Heard in this court at the October term, 1911. Reversed and remanded. Opinion filed March 21, 1912.

WISE, KEEFE & WHEELER, for appellant; MASTIN & SHERLOCK, of counsel.

GEERS & GEERS, for appellee.

MR. JUSTICE McBRIDE delivered the opinion of the court.

This cause was tried in the Circuit Court of Madison County and resulted in a verdict and judgment for the plaintiff for $1,999.99, to reverse which judgment this appeal is prosecuted.

On the 27th day of January, 1910, Herman Retzloff was engaged in driving a mule in appellant's mine and during his first trip into room No. 2 was thrown from the car and killed. The deceased had been engaged in the business of driving a mule in other mines in Madison county for some time but had been at work driving a mule in appellant's mine for about five days, and had been driving in different parts of the mine. On the morning in question he had been sent in to room No. 2 for the first time and during his first trip in such room he was killed. The room had been driven in to a depth of 175 feet and was about thirty feet wide. The track was laid in the center of the room and was constructed of iron rails laid on ties which

were placed at intervals of three to five feet apart. The track was about forty-two inches wide. The cars used in appellant's mine were about seven feet long, five feet wide and three feet deep, equipped with flange wheels about twelve or sixteen inches in diameter, and provided with wooden bumpers projecting from the bottom of the box, about three or four inches wide in the center and rounded off at the corner of the boxes, which bumpers were protected with iron bands or rims. Beneath the center of the bumpers are fastened the links used in coupling the cars. A tail chain is used for hitching the mule to the car and the driver while pulling a load rides with one foot on the bumper of the car and the other on the tail chain, with one hand on the mule's rump and one hand upon the car. Just before the deceased met his death he had hitched his mule to a car of coal in room No. 2 and was hauling it out from the room and when he had reached a point claimed by appellee's witnesses to have been wet and muddy, the deceased, from some cause, fell from the car and was killed. There is a wide difference in the testimony of the witnesses as to the condition of the track and surroundings at the place at which the deceased was killed. It is contended by counsel for appellant that the verdict of the jury was so manifestly against the weight of the evidence that for that reason the judgment should be reversed.

The declaration in this case consists of two counts. The negligence charged in the first count is that the defendant failed and neglected to use reasonable care to provide plaintiff's intestate with a reasonably safe place to perform his work, and a reasonably safe track over, upon and along which to drive said mule and convey said cars at, to wit, a point in room No. 2 in the first stub entry, but on the contrary caused and permitted the ties and rails of said track at said point to be and remain then and there raised and elevated above the ground at a height of, to wit, eighteen

166 APPELLATE COURTS OF ILLINOIS.

Stullken v. Donk Bros. Coal & Coke Co., 169 Ill. App. 164.

inches, thereby rendering said place and the track at said place extra hazardous and dangerous for plaintiff's intestate to drive said mule over, upon and along as aforesaid; that deceased was then and there ignorant of the dangerous condition of said track, and while exercising due care and caution for his own safety, and while in the performance of his duties as a driver said mule stepped between the ties of said track which were then and there so raised and elevated above the ground as aforesaid, thereby causing the tail chain upon which deceased was riding to strike against and upon said ties so raised and elevated as aforesaid and thereby plaintiff's intestate was thrown from off said tail chain and from off said car to and upon the track and said car ran upon him and he was killed.

The second count is the same as the first except that it avers that defendant permitted and allowed said track and the ties and rails thereof to be and remain then and there without sufficient packing or ballasting and insecurely and insufficiently loaded and fastened to the ground thereby rendering said track at said place unsafe, loose and springy and the place and track extra hazardous and dangerous for plaintiff's intestate to drive said mule along and to ride over as aforesaid, and that while the deceased was hauling the car along said track it was caused to move up and down and the said car was caused to rock, spring, bounce and bound upon said track and said tail chain was caused to jerk suddenly and violently and plaintiff's intestate was thrown and caused to slip from off said car and tail chain and was run upon by said car and killed.

Counsel for appellant assign as error, that the trial court erred in its ruling on evidence, that it erred in the giving of instructions, that the deceased was killed by a danger incident to his employment and the risk assumed by him, and that the verdict of the jury is manifestly against the weight of the evidence.

We think the verdict of the jury in this case is mani-

festly against the weight of the evidence and that this is the only error that need be considered. We agree with the contention of counsel for appellee that where there is a mere conflict in the evidence that the verdict will not be disturbed unless it is clearly and manifestly against the weight of the evidence and that the judgment will not be reversed on account of the mere preponderance of the number of witnesses and that the "evidence should be measured by weight and not (alone) by count," and in determining the facts in this case we have kept these rules clearly before our minds. The Supreme Court has said that where it appears that the verdict of the jury is manifestly against the weight of the evidence it then becomes the duty of the appellate court, regardless of the integrity of the jurors, or as to whether they may or may not have been influenced from prejudice or passion or some improper motive or condition in the making up of their verdict, to reverse the judgment and grant a new trial. Donelson v. E. St. L. & Sub. R. R. Co., 235 Ill. 625.

There were three witnesses for the appellee who testified that the track in question was unsafe and muddy, and there are eleven witnesses for appellant who testified that the track in question was safe, well ballasted and not muddy. The only witness who appears to have any financial interest in the result of this law suit is Gus. Retzloff, a brother of the deceased. One of the witnesses for appellant was the boss driver, one a mine manager, one a civil engineer and the others were miners, persons then engaged at work in the mine. So far as we are able to gather from this record the witnesses for the appellant had equally as good opportunities to observe the condition of the track as did the witnesses for the appellee. The witness Albert Seiberleich says, "The track at that place had been raised from about 16 to 18 inches;" and the ties and rails had both been raised. They had cap pieces under the ties, blocked it up and was raised

for about fifteen feet in length. It was right at this place where Retzloff was killed. Where the track was raised it left holes between the ties and the ties stuck up above the ground and the space in there was open; when the mule walked through there he would step in between the ties and the hollow places; "the ties were about three feet apart at that place." "Retzloff was killed at the place where the track is propped up eighteen inches high with three cap pieces on each side where it was muddy." Gus Retzloff says, "The track was raised 12 or 15 inches, I think." "With the track in that condition the mule stepped in between the ties; there was nothing between the ties. The effect is to make the tail chain lower when you would be riding upon it." "The track was not ballasted between the open spaces, between the ties, nor loaded." Tony Lynch says, "The track was propped up on one side for a distance of about fifteen feet; it had been propped that way about two weeks before he got killed; there was a little sag on one side of the track and the cars coming down would sag down there, and they just put the cap pieces under one side, and the other side was not propped at all, and when they put these cap pieces under there they made this track level and that is the reason they put it under there." The other witness for appellee, Cling Gray, says he did not notice the condition of the track; that he rode on the rear end of the bumper and the car bounced a little and zigzagged. This is the total of the evidence for appellee upon this question. Two of these witnesses testified that the whole track was propped up from 15 to 18 inches; the other, Tony Lynch, says it was only propped on one side and that was to make the track level. Some one or more of these witnesses are evidently mistaken about the condition of the track and it seems to us that if the track had been propped up from 15 to 18 inches and the ties were three feet apart that when the deceased fell he would have dropped

far enough below the car to have protected himself, or even if he had fallen upon the ties the car in all probability would have pushed him off in to the open space that was left there, as according to the testimony of the witnesses there was no ballast between these ties but an open space of fifteen to eighteen inches deep. Some of the witnesses for the appellant saw the deceased under the car, others examined the place shortly afterward but the evidence shows conclusively that the conditions of the place at the time the other witnesses examined it was the same as when the deceased was injured. It is true, Tony Lynch says that he was there on the next morning and that the place had been fixed but he is squarely contradicted in this statement by four or five witnesses who say that the place was the same. Walter Clark, County Mine Inspector, examined the place in about one hour and a half after the accident with a view of ascertaining the conditions and he says that it was not muddy at this place, that the track was not propped up but that it was well ballasted and the ties covered with dirt, and he noticed it particularly. August Brusatti testifies that he helped to get Retzloff out from under the car and that he paid close attention to it and that it was dry. Alexander Pettigrew, formerly mine manager for appellant but now at work for Middleton Coal Co., Logan county, says that it was dry and the roadbed was solid and that there were no blocks under the ties. Needler, the civil engineer, says that he was in the room about ten or half past ten o'clock; that the conditions were safe; that the ground was dry and the dirt filled up between the rails and the top of the ties. M. W. Jackson, a miner, says that he saw Retzloff under the car; that he crawled under the car to ascertain if he was dead, and was there again in the afternoon as foreman of the coroner's jury and examined the place particularly; that the roadbed was the same as any ordinary track, ties were covered with dirt and

170    APPELLATE COURTS OF ILLINOIS.

Stullken v. Donk Bros. Coal & Coke Co., 169 Ill. App. 164.

the condition of the track was good. Frank Reznicek says he is a coal miner and that he went as a member of the coroner's jury, after dinner, and examined this place and for a distance of fifteen or twenty feet from the point where the accident occurred the track was filled in between the ties and that the track was in pretty good condition. J. McCormick was the boss driver and went into the room an hour or an hour and a half after the accident happened; was there the day before and says that it was not muddy and the track was well ballasted. Alex Seeger, a miner, says that he saw the place where the deceased was killed and was there when they took him from under the car; saw no mud; that there was dirt in between the ties that was hard, called clay; that about two weeks before this the track had been raised up on one side five or six inches for a short distance to make it level. That he had been going through this room for about one year. Frank Molosky said he was timberman; that he helped take Retzloff from under the car; says it was a little damp but no mud there, and that some of the ties could be seen above the dirt and some of them were covered up with the dirt; that a week or two before this accident one side of the track had been raised a little. Joe Fencil, a miner, says that he went in to the room where deceased was killed, about nine o'clock that morning, and the car was there blocked up and that he and two others with him examined the place and that the road was filled up with clay or dirt. Wm. Pierce, assistant mine manager, says that he went to the place of the accident in fifteen or twenty minutes after it occurred and took with him Joe Fencil and Frank Beniski. "We found the car raised up; the track was well ballasted and appeared level and was not springy; was in good condition."

We have carefully read the testimony of each and every witness in this case, have considered their relations to the several parties, their opportunities for

observing the matters about which they have testified, and are satisfied that appellee's theory of this case is not sustained by the evidence; that the testimony of his witnesses cannot be taken as the true version of this accident, that the testimony of appellant's witnesses being apparently creditable and overwhelming in number must be taken as the true theory of this sad affair. We are of the opinion that the verdict of the jury is manifestly against the weight of the evidence and that the Circuit Court erred in not granting a new trial herein, and in rendering judgment against the appellant. It is therefore ordered that the judgment of the Circuit Court be reversed and the cause remanded.

*Reversed and remanded.*